IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| NEW YORK LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:14-CV-101 (MTT) |
| DEAN GRANT, | ) ) ) | |
| Defendant. | ) ) ) | |

## ORDER

Before the Court is Plaintiff New York Life Insurance Company's motion to dismiss (Doc. 12) Defendant Dean Grant's counterclaim (Doc. 7) and New York Life's motion to strike (Doc. 17) Grant's amended counterclaim (Doc. 15). For the following reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part**, and the motion to strike is **DENIED**.

## I. BACKGROUND

New York Life sells insurance products. (Doc. 1 at ¶ 19). Grant began working for New York Life as an Agent on October 7, 1988, and as a District Agent on March 6, 2000. (Doc. 15 at ¶¶ 1-4). As an Agent, Grant received commissions based on his own sales of New York Life products, and as a District Agent, he received override commissions ("Overrides") based on sales by other agents within his District Agency. (Docs. 1 at ¶ 10; 15 at ¶ 8). The relationship between New York Life and Grant, including the amount of commissions he earned, was governed by an Agency Contract and a District Agency Agreement. (Doc. 15 at ¶¶ 8-10). Under certain circumstances,

such as if an insurance product was rescinded, declined or cancelled, Grant was obligated to reimburse New York Life. (Doc. 1 at ¶ 19). Grant terminated his Agency Contract on December 31, 2013, and his District Agency Agreement on July 31, 2013, "pursuant to his retirement from New York Life." (Doc. 15 at ¶¶ 1-5). On March 13, 2014, New York Life filed this lawsuit against Grant, seeking to recover $287,819.01 that Grant allegedly failed to reimburse New York Life. (Doc. 1 at ¶ 3).

On April 14, 2014, Grant filed a counterclaim along with his answer and defenses to New York Life's complaint. (Doc. 7). New York Life timely moved to dismiss Grant's counterclaim for failure to state a claim upon which relief can be granted. (Doc. 12). Grant filed a consent motion for a four-week extension of time to file his response to New York Life's motion to dismiss, which the Court granted. (Doc. 14). Grant's response to New York Life's motion to dismiss was due on June 17, 2014. That day, Grant filed a brief in response to New York Life's motion to dismiss, as well as an amended counterclaim. (Doc. 15; 16). New York Life then filed a motion to strike Grant's amended counterclaim, arguing that the amended pleading was (1) untimely because it was filed without its consent or the leave of Court and after the deadlines set forth by Fed. R. Civ. P. 15; and (2) futile because, even as amended, it fails to state a claim upon which relief can be granted. (Doc. 17 at 2). Grant filed a response to New York Life's motion to strike, arguing the amended counterclaim was timely filed and addressing New York Life's futility arguments. (Doc. 19).

In his amended counterclaim, Grant alleges New York Life, as early as 2010, began interfering with the successful performance of Grant's Agency Contract and

District Agency Agreement.[1]  Grant makes four allegations against New York Life.  First, Grant alleges New York Life made substantial changes to the District Agency Agreement, including terms related to his compensation, without providing the required written notice.  (Doc. 15 at ¶¶ 19-20).  In Grant's view, this impacts how much, if any, he owes New York Life.  Second, Grant alleges New York Life failed to officially transfer an agent to his District Agency, despite representations that it would do so.  (Doc. 15 at ¶ 21).  New York Life has not covered the numerous expenses incurred by Grant for "training and grooming" the agent from 2008 to 2013.  (Doc. 15 at ¶ 21).  Third, Grant alleges New York Life interfered with clients of his limited liability company, Grant Financial Group, through unauthorized contact, unauthorized letters, and the production of erroneous information.  (Doc. 15 at ¶¶ 13-18).  Finally, Grant alleges New York Life arbitrarily refused to honor a successor agreement Grant signed with a current New York Life agent, which would have allowed Grant's clients to be taken care of by an experienced agent.  (Doc. 15 at ¶ 22).  Instead, Grant's book of clients was transferred to inexperienced agents, resulting in damages to Grant's business reputation in the local community.  (Doc. 15 at ¶ 22).

Based on these allegations, Grant asserts the following claims against New York Life: 1) breach of contract; 2) breach of implied covenant of good faith and fair dealing; 3) negligent misrepresentation; 4) breach of implied contract; 5) quantum meruit; 6) promissory estoppel; 7) tortious interference with business relations; 8) negligent and intentional infliction of emotional distress; and 9) attorney's fees.

---

[1] For the reasons discussed below, the Court will consider the allegations raised in the amended counterclaim because the amendment was timely.

## II. DISCUSSION

### A.  New York Life's Motion to Strike Grant's Amended Counterclaim

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial:

> (1) *Amending as a Matter of Course*.  A party may amend its pleading once as a matter of course within:
>   a.  21 days after serving it, or
>   b.  If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments*.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Under Rule 15(a)(2), the Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

New York Life argues the amended counterclaim is untimely because it did not consent to the amended counterclaim.  New York Life also argues the amended counterclaim is futile because, even as amended, it fails to state a claim upon which relief can be granted.  (Doc. 18 at 4-10).  Finally, New York Life argues it will be prejudiced if the Court allows the amending pleading because it incurred expenses in moving to dismiss the counterclaim as originally pled.  (Doc. 18 at 2).  For this reason, New York Life requests the amended counterclaim be allowed only on the condition that Grant pay New York Life's reasonable attorney's fees.

Grant acknowledges the amended counterclaim was filed outside of the 21 days allowed by Rule 15(a)(1).  Nevertheless, Grant "believes that his amended pleading is still timely as a matter of course" and "appreciates that he has exercised this right to amend as a matter of course and without leave of court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure."  (Doc. 16 at 3-4).  Specifically, Grant cites to the consent motion that was agreed upon and filed by the Parties.  Grant argues that he "has not attempted to use this extension of time in which to file this Response in order to circumvent the specific time periods established under Rule 15(a)."  (Doc. 16 at 4). Grant also argues the filing of the amended counterclaim does not thwart the purpose of Rule 15.  (Doc. 16 at 4).

On May 16, 2014, Grant filed a consent motion "to extend the time in which Defendant-Counterclaimant might file his response to Plaintiff's Motion to Dismiss Defendant's Counterclaims."  (Doc. 14).  The Court granted the motion on May 19.  One response to a motion to dismiss is to file an amended pleading.  *See* Fed. R. Civ. P. 15, Advisory Committee's Note (2009 Amendments) ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim.").  The Court's Order, then, extended the time period for filing an amended counterclaim as a matter of course under Rule 15(a).  Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time ….").  That is precisely what Grant did.[2]  Because Grant timely amended his counterclaim pursuant to the Court's extension of time, New York Life's motion to strike is **DENIED**.

---

[2] Although New York Life argues it did not give Grant consent to amend his counterclaim simply because it gave him consent to file a motion for extension of time, New York Life seems to

"Under the Federal Rules, an amended complaint supersedes the original complaint." *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982). "As a result, motions directed at the superseded pleading generally are to be denied as moot." *Mize v. Blue Ridge Bank*, No. 8:12-CV-2763, 2013 WL 1766659, at *1 (D.S.C.). Nevertheless, the Court may consider New York Life's motion to dismiss the original counterclaim as being directed towards the amended counterclaim. *See* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."); *Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1345 n.2 (N.D. Ga. 2013). "To hold otherwise would be to exalt form over substance." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011).

New York Life filed a consolidated reply brief in response to Grant's amended counterclaim, arguing that the counterclaim, even as amended, fails to state a claim upon which relief can be granted. (Doc. 18 at 2) Because New York Life has responded to the merits of the amended counterclaim and continues to allege that Grant's counterclaim fails to state a claim, the Court will consider New York Life's original motion to dismiss as being directed towards Grant's amended counterclaim.

---

acknowledge in its consolidated reply brief that one way to respond to a Rule 12(b)(6) motion is to file an amended pleading. (Doc. 18 at 1) ("In *response* to New York Life's Rule 12(b)(6) motion to dismiss the nine counts of his counterclaim, defendant filed an 'amended answer, defenses and counterclaims.'") (emphasis added).

### B. Failure to State a Claim[3]

#### 1. Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Further, where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

---

[3] New York Life relies on two extrinsic documents in its motion to dismiss: (1) an Agency Contract, Exhibit 1, and (2) a District Agency Agreement, Exhibit 2.  In his amended answer, Grant denies that Exhibit 1 is an actual copy of the Agency's Contract signed by Grant, but admits that Exhibit 2 is a copy of the District Agency Agreement he signed.  (Doc. 15 at ¶¶ 7, 9). "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citation omitted); *see also Brooks v. BCBS of Fla., Inc.*, 116 F.3d 1364, 1369 ("[D]efendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").  Thus, the only document the Court may rely on is the District Agency Agreement.

2.  **Analysis**[4]

    a.  **Count I - Breach of Contract**

Grant alleges he entered into an Agency Contract and a District Agency Agreement with New York Life.  He contends New York Life breached these agreements by 1) failing to provide written notice and 2) modifying the agreements in such a way as to make performance impractical and impossible.  (Doc. 15 at ¶¶ 23-28).

A breach of contract claim in Georgia requires "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010).  "The breach must be more than de minimus and substantial compliance with the terms of the contract is all that the law requires."  *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371, 669 S.E.2d 179, 181 (2008).  "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible."  *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590, 740 S.E.2d 887, 893 (2013) (citation omitted).

Grant alleges New York Life breached the express terms of both the Agency Contract and the District Agency Agreement because New York Life "failed to provide the proper written notice of changes to the compensation schedule[s] as required under the respective agreements."  (Doc. 15 at ¶ 26).  According to Grant, the District Agency Agreement provides: "New York Life will have the right to change or modify [Compensation] Schedule A, including Exhibits I, II and III, by giving the District Agent

---

[4] The Parties agree the claims are governed by Georgia Law.  (Doc. 15 at ¶ 31 and Doc. 12-1 at 9).

thirty (30) days' written notice."  (Doc. 15 at ¶ 9).  Similarly, the Agency Contract provides: "The Company reserves the right to change such [compensation] schedules, in whole or in part, at any time by giving written notice to the Agent and the new rates, policy years, rules and conditions will apply as set forth in the Schedules."  (Doc. 15 at ¶ 10).

In Grant's view, "the written notice is what triggers [New York Life's] right to amend the terms of the agreement[,]" and "the failure of [New York Life] to provide written notice of the alteration of the material terms of both agreements is a *complete* failure of compliance with such provisions."  (Doc. 19 at 6-7).  Grant contends that although he cannot determine the exact amount of damages at this time, "[t]he disparity in the amount of recovery alleged by [New York Life] and the actual amount, if any, owed by Grant are a fundamental part of the damages claimed by Grant."  (Doc. 19 at 7).  In response, New York Life argues Grant, at most, alleges a "de minimis" breach of contract and has failed to provide "a statement of any '*resultant damages*' due to the alleged failure to provide written notice."  (Doc. 18 at 5).

Grant also alleges New York Life's modification to the terms of the District Agency Agreement "rendered the performance thereunder by Grant impractical and impossible, thus frustrating the intended purpose of such agreements as a whole." (Doc. 15 at ¶ 27).  Grant alleges New York Life modified the amount of Overrides he received in such a way as to place significant limitations on the profitability of Grant's District Agency.  (Doc. 15 at ¶ 19).  He further alleges New York Life modified the number of agents allowed in his District Agency, which similarly resulted in a substantial decrease in profitability.  (Doc. 15 at ¶ 20).  New York Life argues "such 'conclusory …

sweeping allegations with no factual information to support [the] claims' are not sufficient to state a claim for breach of contract."  (Doc. 18 at 5).

It may be that the breach of contract was de minimis and did not cause damages. However, the Court cannot decide that issue at the motion to dismiss stage.  And it may be that New York Life's allegedly improper modification of the terms did not cause damages by rendering performance of the agreement impractical or impossible.  The Court cannot decide that issue at this stage of the litigation.  Because Grant has pled a breach and damages therefrom, he has alleged sufficient facts to state a claim for breach of contract.

### b.  Count II - Breach of Good Faith and Fair Dealing

Grant asserts New York Life "has breached the implied covenant of good faith and fair dealing by acting in bad faith when exercising those rights within its sole discretion under the terms of the contracts thereby rendering Grant's performance impossible."  (Doc. 16 at 7).  Specifically, Grant alleges "New York Life's conduct in the performance of these agreements by, among other things, arbitrarily, unilaterally, and unreasonably altering the material terms of the agreements constitutes a breach of the implied covenant of good faith and fair dealing arising from these express terms."  (Doc. 15 at ¶ 33).  In response, New York Life argues this claim is based on the same alleged conduct as Grant's breach of contract claim, and "[b]ecause Grant's cause of action for breach of the implied covenant of good faith and fair dealing cannot be asserted independently of his breach of contract claim, it should be dismissed."  (Doc. 18 at 6).

Under Georgia law, "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement."  *Myung Sung Presbyterian*

*Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.,* 291 Ga. App. 808, 810, 662 S.E.2d 745, 748 (2008). "It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*." *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990).

Grant alleges New York Life entered into two written agreements and violated the implied covenant of good faith and fair dealing in modifying the terms of these agreements. Grant has set forth a claim for the breach of an express agreement. Accordingly, he has alleged facts sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.

### c. Count III - Negligent Misrepresentation

In Count III, Grant alleges New York Life negligently supplied false information pertaining to 1) conversion credits, 2) compensation schedules, and 3) agent placements. (Doc. 15 at ¶ 37). But Count III contains no facts supporting these claims. In his brief, Grant says the factual bases are found in paragraphs 18, 21, and 22 of his amended counterclaim. (Doc. 19 at 9). The Court will turn to those paragraphs to determine whether Grant has sufficiently alleged claims for negligent misrepresentation.[5] New York Life argues Grant "has failed to allege how any person justifiably relied to his or her detriment on false information negligently provided by New

---

[5] Paragraphs 18, 21, and 22 make no mention of compensation schedules. The Court takes Grant at his word; his claims for negligent misrepresentation are based factually only on paragraphs 18, 21, and 22. Thus, he does not assert a claim for negligent misrepresentation regarding compensation schedules.

York Life."[6]  (Doc 18 at 6).  According to New York Life, "the only allegedly 'false' information provided by New York Life was 'erroneous calculations to clients of Grant Financial Group regarding 'conversion credits,' that was discovered and corrected." (Doc. 18 at 7-8).  New York Life also takes the position that Fed. R. Civ. P. 9(b) applies to this claim.  (Doc. 18 at 7).  Grant does not take a position on whether Rule 9(b) applies, but believes he has sufficiently pled a negligent misrepresentation claim against New York Life.  (Doc. 19 at 10).

To state a claim for negligent misrepresentation claim, Grant must allege facts showing "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."  *Marquis Towers, Inc. v. Highland Group*, 265 Ga. App. 343, 346, 593 S.E.2d 903, 906 (2004) (citation and quotation marks omitted).  To be liable for a negligent misrepresentation, it is not necessary that the misrepresentation be made directly to the complaining party, but it is necessary that the complaining party reasonably rely on the misrepresentation and be injured as a result.  *See, e.g.*, *Wingate Land, LLC v. ValueFirst, Inc.*, 314 Ga. App. 24, 27, 722 S.E.2d 868, 870 (2012); *Spellman v. Harrell Ins. Agency, Inc.*, 292 Ga. App. 249, 251, 663 S.E.2d 816, 818 (2008); *White v. BDO Seidman, LLP*, 249 Ga. App. 668, 671, 549 S.E.2d 490, 493 (2001).  Additionally, under Georgia law it is necessary that the maker of the statement actually be aware that the third party—here Grant—will rely on the information and that the "known third party's reliance was the desired result of the misrepresentation."  *Martha H. W. Trust v. Market Value of Atlanta, Inc.*, 262 Ga.

---

[6] Grant did not originally allege a claim for negligent misrepresentation.  Although New York Life did not address the merits of this claim in its motion to dismiss, New York Life addresses the claim in its consolidated reply brief.  (Doc. 18 at 6).

App. 90, 92, 584 S.E.2d 688, 691 (2003) (internal quotation marks and citations omitted).  The Eleventh Circuit has not expressly ruled that Rule 9(b)'s heightened pleading standard applies to claims for negligent misrepresentation under Georgia Law, and district courts differ over whether the standard should apply.  *See DIRECTV, LLC v. Stanley Wells*, No. 1:13-CV-28 WLS, 2013 WL 6036686, at *2 n.2 (M.D. Ga.) (collecting cases).

First, in paragraph 18 of his amended counterclaim, Grant alleges New York Life, through one of its managers, "produced erroneous calculations to clients of Grant Financial Group regarding 'conversion credits' to which such clients would be entitled for the conversion of their life insurance policies."  (Doc. 15 at ¶ 18).  Although Grant does not provide any details about the identity of these clients, he alleges the clients agreed to the conversion credits.  New York Life then allegedly "indicated that a miscalculation had occurred" and "offered an 'accommodation agreement' to the clients of Grant Financial Group."  (Doc. 15 at ¶ 18).  According to Grant, this agreement "was materially different and significantly less advantageous for the conversion of the clients' term policies."  (Doc. 15 at ¶ 18).  In addition, Grant alleges the "clients received a letter indicating that their current term life policies had lapsed, when in fact all applicable premiums had been paid and applied to the policies."  (Doc. 15 at ¶ 18).  Based on New York Life's behavior, "the clients ultimately rejected the accommodation and conversion of policies resulting in a substantial loss of compensation to Grant and damages to Grant's reputation with his clients."  (Doc. 15 at ¶ 18).

Grant fails to allege that New York Life knew Grant would rely on the allegedly false information and intended him to do so.  Indeed, Grant fails to allege how *he* relied

on the information supplied by New York Life.  Paragraph 18 of his amended counterclaim makes clear only clients received and acted on this information. Accordingly, Grant has failed to state a claim against New York Life for negligent misrepresentation to the clients, even under the more lenient Rule 8 pleading standards.

Grant, citing paragraph 22 of his amended counterclaim, alleges New York Life "arbitrarily refused" to honor a successor agreement Grant entered into with a current New York Life agent.  The purpose of the successor agreement was to "insure that [Grant's] New York Life clients that would remain with New York Life were taken care of by a veteran and experienced agent who was geographically convenient to them." (Doc. 15 at ¶ 22).  Instead, New York Life transferred Grant's former clients to "inexperienced agents," which "resulted in damages to Grant's business reputation in the local community."  (Doc. 15 at ¶ 22).  Because Grant fails to allege how New York Life supplied false information, and consequently fails to allege how he relied on such information, this claim for negligent misrepresentation fails.

Finally, citing paragraph 21 of his amended counterclaim, Grant alleges that Grant Financial Group acted as the "de facto District Agent office" for an agent identified as U.P. from approximately January 29, 2008, to July 31, 2013.  (Doc. 15 at ¶ 21). According to Grant, he was "led to believe that U.P. would be officially transferred to his District Agency, thereby affording Grant the entitlement to Override compensation for U.P.'s production."  (Doc. 15 at ¶ 21).  However, U.P. was never officially transferred, Grant never received any Overrides, and New York Life "has not remitted any amounts

to cover expenses or reimbursements for the training and supervision of U.P." (Doc. 15 at ¶ 21).

Again, Grant has failed to allege that New York Life negligently supplied false information, knew Grant would rely on such information, and intended him to do so. Nor does Grant allege how he relied on any false information. Rather, Grant alleges New York Life promised to do something that it did not do. This could be a fraud claim if New York Life had no intention to fulfill its promises at the time it made them. *McCravy v. McCravy,* 244 Ga. 336, 338, 260 S.E.2d 52, 54 (1979). But as pled, Grant has failed to state a claim for negligent misrepresentation.

### d. Count IV - Breach of Implied Contract

Grant argues, in the alternative, he had an implied contract or contracts with New York Life whereby he "performed, both as an Agent and District Agent, in accordance with his obligations, which implied contractor contracts were breached by New York Life through its improper conduct." (Doc. 15 at ¶ 39). New York Life responds that this claim fails as a matter of law "[b]ecause [Grant] alleges that he had express contracts on the very subjects forming the basis for his implied contract … claim[]." (Doc. 18 at 8).

New York Life's argument is without merit. Georgia law allows a party to plead a claim for breach of an implied contract in the alternative to a claim for breach of an express contract. *See Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 248, 590 S.E.2d 224, 232 (2003); *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309-10 (N.D. Ga. 2012). This is precisely what Grant has done. He has disputed the validity of the express contracts, "to the extent that they were unilaterally modified by [New York

Life]," and has pled, in the alternative, a claim for breach of an implied contract.  (Docs. 15 at ¶ 39; 16 at 8).  Accordingly, the Court cannot say the claim fails as a matter of law.

### e.  Count V - Quantum Meruit

Grant argues, in the alternative, "[he] is entitled to quantum meruit for the work he performed and actions taken on behalf of New York Life and accepted by New York Life."  (Doc. 15 at ¶ 44).  Specifically, Grant argues he is entitled to "the value of the work he performed and expenses incurred on behalf of New York Life in serving as a District Agent for U.P. for which Grant was not paid, compensated or reimbursed."  (Doc. 15 at ¶ 41).  Grant alleges "New York Life consented to and knew that Grant was performing work and engaging in conduct to the benefit of New York Life."  (Doc. 15 at ¶ 42).  Moreover, Grant alleges "New York Life accepted the value of [his] work and actions."  (Doc. 15 at ¶ 43).  In response, New York Life argues this claim fails as a matter of law because Grant alleges he had express contracts on the subjects forming the basis for his quantum meruit claim.  (Doc. 18 at 8; 12-1 at 12).

To recover under a quantum meruit theory, a party must prove four elements: "(1) his performance as agent of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) the defendants' receipt of which without compensating [claimant] would be unjust; (4) [and] expectation of compensation at the time of the rendition of the services ...."  *Allen v. T.A. Commc'ns, Inc.*, 181 Ga. App. 726, 727, 353 S.E.2d 569, 570 (1987).  Although "there cannot be an express and implied contract for the same thing existing at the same time between the same parties," the existence of an employment contract does not automatically invalidate an employee's quantum meruit claim.  *Fonda Corp.*, 144 Ga.

App. at 292, 241 S.E.2d at 260.  A plaintiff can recover "[t]he reasonable value of extra work performed in addition to what the contract contemplated."  *Gerdes v. Russell Rowe Commc'ns, Inc.*, 232 Ga. App. 534, 537, 502 S.E.2d 352, 355 (1998) (citation and internal quotations omitted).

By training U.P., Grant alleges he provided value to New York Life, who knowingly accepted Grant's services.  Grant also alleges he anticipated receiving compensation by rendering these services.  Although Grant has alleged a claim for breach of contract, it is not undisputed that a valid contract exists.  Grant alleges New York Life unilaterally modified the agreements at issue in bad faith, such that the contracts are no longer supported by consideration.  (Doc. 16 at 8).  Accordingly, Grant has sufficiently pled this claim in the alternative and may be able to recover under this theory.  At this stage of the litigation, the Court cannot say the claim fails as a matter of law.  *See Clark*, 914 F. Supp. 2d at 1309.

### f.  Count VI - Promissory Estoppel

Grant raises a claim, in the alternative, for "promissory estoppel in that the Agency Contract and District Agency Agreement, to the extent such contracts were unilaterally modified by New York Life, were not supported by sufficient consideration."  (Doc. 15 at ¶ 45).  According to Grant, he was induced to perform by New York Life, based on misrepresentations made by New York Life, and "under the impression that he would be adequately compensated for such services."  (Doc. 15 at ¶ 47).  New York Life acknowledges "a party is generally permitted to plead both promissory estoppel and breach of contract claims in the alternative," but argues Grant's counterclaim "does not indicate that its claims are asserted as alternative theories of recovery."  (Doc. 12-1 at

13).  In response, Grant argues he "has disputed the validity of the contracts at issue." (Doc. 16 at 8).

Under Georgia law, a claim for promissory estoppel "requires a showing that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiffs would rely on such promises, and (3) the plaintiffs did in fact rely on such promises to their detriment."  *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005); *see also* O.C.G.A. § 13–3–44(a).  Moreover, a promise is "a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  *F & W Agriservices, Inc. v. UAP/Ga. Ag. Chem., Inc*., 250 Ga. App. 238, 241, 549 S.E.2d 746, 749 (2011) (citation and quotation marks omitted).

Grant alleges New York Life made certain promises—namely, that U.P. would be transferred to his District Agency if Grant trained and groomed the agent.  Over a five year period, Grant relied on such promises.  Grant "incurred numerous expenses for the training and grooming of U.P" as a result of New York Life's inducement.  (Doc. 15 at ¶ 21).  Grant has alleged sufficient facts to state a claim for promissory estoppel.  It may be that this claim fails because a valid express contract exists on the very subject.  But at this stage of the litigation, the Court cannot say that the claim fails as a matter of law.

### g.  Count VII - Tortious Interference with Business Relations

Grant alleges New York Life "interfered with … relationships between Grant Financial Group and its clients by engaging in pretextual and improper conduct through the improper solicitation of these clients."  (Doc. 15 at ¶ 50).  As a result, Grant alleges New York Life "imposed undue and improper economic pressure on Grant and his

company, Grant Financial Group." (Doc. 15 at ¶ 50). In response, New York Life argues Grant "does not allege that New York Life 'induced a third party or parties not to enter into or continue a business relationship' with him, and he has no standing to assert this claim on behalf of Grant Financial Group, a non-party."[7] (Doc. 18 at 9). Moreover, New York Life argues Grant has failed to allege New York Life is a "stranger" to the business relationships with which it allegedly interfered. (Doc. 18 at 9). In New York Life's view, "Grant solicited applications for insurance on New York Life's behalf, and the resulting contracts formed the business relationship between New York Life and its insureds." (Doc. 12-1 at 17). Accordingly, "[t]he 'clients' were not those of Grant or of Grant Financial Group, but were policyholders who were parties to insurance contracts with New York Life." (Doc. 12-1 at 16).

To maintain a claim for tortious interference with business relations, a plaintiff must prove:

> (1) improper action or wrongful conduct by the defendant without privilege;
> (2) the defendant acted purposely and with malice with the intent to injure;
> (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter into an anticipated relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 150, 687 S.E.2d 168, 176 (2009). Moreover, to be liable, the defendant "must be a stranger" to the relationship; that is, parties to a relationship cannot be liable for tortious interference with that relationship. *See id.* (citation omitted). *See also H&R Block E. Enters., Inc. v. Morris*,

---

[7] Grant did not originally plead a claim for tortious interference with business relations; instead, Grant raised a claim for tortious interference with contractual relations. (Doc. 7 at ¶¶ 47-50). Although New York Life did not address the merits of this claim in its motion to dismiss, New York Life addresses the claim in its consolidated reply brief. (Doc. 18 at 9).

606 F.3d 1285, 1295 (11th Cir. 2010) ("[I]t is well-established under Georgia law a party cannot tortiously interfere with its own business relationships.").

In this case, Grant complains New York Life disrupted the relationship it had with clients of Grant Financial Group.  However, the clients of Grant Financial Group appear to be New York Life's clients.  Grant has not alleged any facts suggesting that New York Life was a stranger to the business relations Grant shared with the clients of Grant Financial Group.  Accordingly, Grant cannot sustain a claim for tortious interference with business relations.

### h.  Count VIII - Negligent and/or Intentional Infliction of Emotional Distress

Grant asserts claims against New York Life for negligent and intentional infliction of emotional distress.  He alleges New York Life "interfered with contracts between Grant Financial Group and its clients, and personally targeted Grant which resulted in physical manifestations for Grant including anxiety, memory loss, and stress."  (Doc. 15 at ¶ 53).  Grant alleges this conduct "was so extreme and outrageous in its nature to which it caused Grant severe emotional distress for which New York Life is liable." (Doc. 15 at ¶ 54).  In response, New York Life argues "Grant has not asserted how New York Life's alleged conduct was so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  (Doc. 18 at 9).  The Court agrees.

To prevail on a claim for intentional infliction of emotional distress, the burden is "stringent."  Grant must demonstrate that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  The defendant's

conduct must be so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.  Whether a claim rises to the requisite
level of outrageousness and egregiousness to sustain a claim for
intentional infliction of emotional distress is a question of law.

*Steed v. Fed. Nat. Mortg. Corp.*, 301 Ga. App. 801, 810, 689 S.E.2d 843, 851-52 (2009)

(citation omitted).  *See also Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1003

(11th Cir. 2013).

"[T]o recover under a claim of negligent infliction of emotional distress a plaintiff

must establish '(1) a physical impact to the plaintiff; (2) the physical impact causes

physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the

plaintiff's mental suffering or emotional distress.'"  *Garrett v. Unum Life Ins. Co. of Am.*,

427 F. Supp. 2d 1158, 1163 (M.D. Ga. 2005) (citation omitted).

Although Grant alleges New York Life interfered with contracts between Grant

Financial Group and its clients, as discussed above, Grant has alleged no facts

indicating that these clients were individuals other than New York Life's clients.

Moreover, Grant fails to allege how New York Life personally targeted him.  These

allegations fail to establish the extreme and outrageous conduct necessary to plead a

claim of intentional infliction of emotional distress.  *See Odem v. Pace Acad.*, 235 Ga.

App. 648, 655-56, 510 S.E.2d 326, 332 (1998) ("Liability for intentional infliction of

emotional distress does not extend to mere insults, indignities, threat, annoyances,

petty oppressions, or other trivialities.") (citation and internal quotation marks omitted).

Moreover, Grant cannot sustain a claim for negligent infliction of emotional distress

because he has not alleged that he was physically injured as a result of New York Life's

actions.

### i.   Count IX - Attorney's Fees and Expenses of Litigation

Grant also raises a claim for attorney's fees under O.C.G.A. § 13-6-11 and

incorporates all of his previous allegations by reference.[8]  Grant alleges "New York Life

has engaged in conduct that constitutes bad faith and has been stubbornly litigious in

pursuing this action."  (Doc. 15 at ¶ 56).  Specifically, Grant alleges New York Life

provided him with notice that he owed an existing debit balance and gave him thirty

days to make a payment.  (Doc. 15 at ¶ 56).  However, eight days after New York Life

provided this notice, and before the thirty days had run, New York Life brought suit.

(Doc. 15 at ¶ 56).  In response, New York Life argues Grant's claim for attorney's fees

cannot survive "because the amended counterclaim does not state a viable substantive

claim for other relief."  (Doc. 12-1 at 21).

O.C.G.A. § 13-6-11 authorizes attorney's fees "where the defendant has acted in

bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble

and expense."  However, "a plaintiff-in-counterclaim cannot recover attorney's fees

under O.C.G.A. § 13-6-11 unless he asserts a counterclaim which is an independent

claim that arose separately from or after the plaintiff's claim."  *Byers v. McGuire Props.,*

*Inc.*, 285 Ga. 530, 540, 679 S.E.2d 1, 9 (2009) (citations omitted).  "Moreover, the

independent counterclaim must be viable."  *Sugarloaf Mills Ltd. P'ship of Ga. v. Record*

*Town, Inc.*, 306 Ga. App. 263, 266, 701 S.E.2d 881, 884 (2010).

New York Life contends this claim should be denied because all of Grant's other

claims fail.  (Docs. 12-1 at 21; 18 at 10).  Because the Court has ruled that all of Grant's

claims do not fail, New York Life's motion to dismiss Grant's claim for attorney's fees is

---

[8] The Court notes that it is a waste of judicial resources to require the Court to sift through the facts presented and decide which are material to this cause of action.  *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.10 (11th Cir. 2002).

denied on this ground.  However, the Court notes the Parties' briefs on this issue miss the main point.  *See Singh v. Sterling United, Inc.*, 326 Ga. App. 504, 512-13, 756 S.E.2d 728, 736-37 (2014); *Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions, Inc.*, 858 F. Supp. 2d 1359, 1372-75 (N.D. Ga. 2012).  If New York Life wants to move to dismiss on other grounds, it should do so.

## III. CONCLUSION

For the reasons explained above, New York Life's motion to strike (Doc. 17) is **DENIED**.  New York Life's motion to dismiss (Doc. 12) is **GRANTED in part** and **DENIED in part.**  The motion to dismiss is granted as to Grant's claims alleged in Counts III, VII and VIII of his amended counterclaim, and those claims are hereby **DISMISSED.**  The motion is denied as to Grant's claims alleged in Counts I, II, IV, V, VI, and IX of his amended counterclaim.

SO ORDERED, this 28th day of October, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT